**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09-CR-206 |
| v. | ) | Honorable Harry D. Leinenweber |
| | ) | Judge Presiding |
| MARIO J. RAINONE | ) | |

**DEFENDANT MARIO J. RAINONE'S MOTION FOR
COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant, MARIO J. RAINONE, by and through his attorneys, JOSEPH R. LOPEZ and LISA M. LOPEZ, moves this Honorable Court to grant him release, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). In support of this motion, Mr. Rainone states the following:

**I.    INTRODUCTION**

Mr. Rainone is a 65-year old man who suffers from a multitude of health problems which include skin cancer, cataracts, liver disease, prostate cancer, heart and breathing problems as well as other minor ailments expected in senior citizens. Mr. Rainone is at grave risk for a variety of other diseases and health conditions. His health problems have worsened since his incarceration in February 2009, and the COVID-19 pandemic poses an additional deadly risk to Mr. Rainone. The Centers for Disease Control and Prevention ("CDC") has stated that "[b]ased on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19."[1] Mr. Rainone is a senior citizen and has serious medical conditions.

Recent data shows the severity of the COVID-19 pandemic, and how it is continuing to spread across the world. Leading health institutions including the CDC and the World Health

---

[1] *Coronavirus Disease 2019 (COVID-19) People Who Are At Higher Risk for Severe Illness* (last updated May 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Organization ("WHO") have reported that as of May 16, 2020, the worldwide number of confirmed cases of COVID-19 has reached nearly 4.6 million.[2] The new strain of coronavirus, which causes COVID-19, has killed nearly 310,000 people. *Id*. The severity of COVID-19 is clearly obvious, and the WHO officially declared it a global pandemic on March 20, 2020.[3] Likewise, Governor Pritzker issued a disaster proclamation for Illinois on March 9, and the President of the United States declared a national emergency on March 13.[4]

COVID-19 has not confined its spread by racial, religious, or socioeconomic boundaries, and it has endangered lives in every state throughout the country. Without question, however, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe."[5] Not surprisingly, "infection control is challenging in these settings," as evidenced by the fact that the virus ripped through prions across China.[6] Similarly, the situation in Iranian prisons became so alarming that

---

[2] *COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE)*, Johns Hopkins University, https://gisanddata.maps.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6 (last visited May 16, 2020).

[3] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization, https://bit.ly/2W8dwpS (last visited May 16, 2020).

[4] *Pritzker declares state of emergency for COVID-19*, The State Journal-Register https://www.sj-r.com/news/20200309/pritzker-declares-state-of-emergency-for-covid-19, (last visited April 25, 2020); *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (March 13, 2020).

[5] *Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*, (March 2, 2020), https://bit.ly/2W9V6oS.

[6] *Chinese jails have become hotbeds of coronavirus as more than 500 cases have erupted, prompting the ouster of several officials*, Business Insider (Feb. 21, 2020), https://www.businessinsider.com/500-coronavirus-cases-reported-in-jails-in-china-2020-2.

Secretary of State Mike Pompeo urged the Iranian government to release any Americans in its prions, arguing that their "detention amid increasingly deteriorating conditions defies basic human decency."[7] Ultimately, Iran released tens of thousands of people from its prisons throughout the country. *Id.*

Just like it did in prisons in other parts of the world, COVID-19 has spread rampantly throughout jails and prisons in the United States. Through May 14, 2020, the Illinois Department of Corrections has confirmed that 160 staff members contracted COVID-19, along with 192 inmates who contracted the virus.[8] Similarly, the Minnesota Department of Corrections has reported that as of May 14, 2020, 48 of its staff members have tested positive for COVID-19, and 114 inmates have the virus.[9] Like state prisoners, federal inmates are also facing the effects of the rapidly spreading virus. Data from the Federal Bureau of Prisons shows that 2,338 inmates are infected with COVID-19, and another 375 staff members have tested positive.[10] These numbers show that the country's jails, both state and federal, truly are "petri dishes" for the spread of the novel coronavirus.[11]

**II.    BACKGROUND OF MR. RAINONE'S CASE**

---

[7] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (March 10, 2020), https://www.cnn.com/2020/03/10/politics/mike-pompeo-iran-release-detained-americans-coronavirus/index.html.

[8] Illinois Department of Corrections, COVID 19 Response, https://www2.illinois.gov/idoc/facilities/Pages/Covid19Response.aspx (last visited May 14, 2020).

[9] Minnesota Department of Corrections, COVID-19 Information, https://mn.gov/doc/about/covid-19-updates/ (last visited May 16, 2020).

[10] Federal Bureau of Prisons, COVID-19 Cases (May 18, 2020), https://www.bop.gov/coronavirus/.

[11] Timothy Williams, *Jails are Petri Dishes: Inmate Freed as the Virus Spreads,* shttps://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html (March 30, 2020).

Mr. Rainone's imprisonment stems from a 2009 indictment in which the government charged him with a violation of 18 U.S.C. §922(g) after the Addison Police executed a search warrant at the residence where Mr. Rainone resided. Members of the Addison Police Department recovered a loaded 357 Magnum Pistol. Mr. Rainone was not home at the time of the execution of the warrant.

Mr. Rainone went to trial and was found guilty on February 27, 2013. On October 9, 2014, he was sentenced to 180 months' imprisonment. Mr. Rainone had three prior convictions and was considered an Armed Career Criminal under the United States Sentencing Guidelines. Further, the statutory-mandatory minimum was 15 years pursuant to 18 U.S.C. § 924(e).

During his more than 134 months of incarceration, Mr. Rainone has been a model inmate and has earned the maximum number of good time credits toward his release from custody. Mr. Rainone has avoided all misconduct while at FCM Rochester which is evidenced by the fact that he has no incident reports for violations of any kind. His last incident report was in 2009, and it was for a violation for possessing an item not offered in the commissary. Furthermore, Mr. Rainone participated in the Inmate Skill Development Plan, which is a 12-week re-entry course. Mr. Rainone's current release date from the Federal Bureau of Prisons (the "BOP") is September 24, 2028.

### III. THIS COURT SHOULD MODIFY MR. RAINONE'S SENTENCE AND RELEASE HIM TO HOME CONFINEMENT

Federal law empowers this Court with broad authority to grant a compassionate release. The current COVID-19 outbreak, combined with Mr. Rainone's age and health conditions, amount to the type of extraordinary circumstances that warrant a sentencing reduction. In addition, the facts of this case fit all of the discretionary factors that courts use in determining whether to grant a defendant's motion for compassionate release. Despite the release, Mr.

Rainone will have 5 years of supervised release to serve. Accordingly, this Court should grant this motion, and release Mr. Rainone to home confinement.

Before the First Step Act became law in 2018, only the BOP could move for compassionate release under 18 U.S.C. § 3582. *United States v. Ebbers*, 2020 WL91399 at *1 (S.D.N.Y. Jan. 8, 2020). Congress recognized the inefficiency and unfairness of that process and squarely addressed it in Section 603(b) of Public Law 115-391, which it entitled "Increasing the Use and Transparency of Compassionate Release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Hence, under the First Step Act, either the BOP or the defendant can move for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Since Congress passed the First Step Act, courts now grant compassionate release where the case satisfies four conditions: 1) the defendant has exhausted his administrative rights before moving a federal court for release, 2) the defendant has shown that "extraordinary and compelling reasons warrant" release, 3) the court has considered the factors under 18 U.S.C. § 3553(a), and 4) the court has found that release is consistent with the Sentencing Commission's policy statements.

      A.      **Mr. Rainone Has Exhausted His Administrative Remedies.**

With regard to the first requirement for compassionate release, the BOP, the warden nor the BOP responded to Mr. Rainone's request for a compassionate release within the 30 days of his request. This failure to respond is a final administrative decision, and thus, "Defendant exhausted his administrative remedies within the BOP" upon receiving BOP's denial of his request. *United States v. Johnson*, 2020 WL1434367 at *2 (W.D. Ark. Mar. 24, 2020). Likewise, the defendant may move for compassionate release if 30 days has elapsed since the warden received his request for release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Moskop*, 2020 WL 1862636 at *1 (S.D. Ill. April 14, 2020). Here, Rainone applied for compassionate release

through the warden's office at Rochester FCI on March 31, 2020. No response has been made by the warden, and since, 30 days have passed, Mr. Rainone has exhausted his administrative remedies.

>    B.   **Extraordinary and Compelling Reasons Warrant Mr. Rainone's Release to Home Confinement.**

If the defendant has exhausted his administrative remedies, a court must then also find that "extraordinary and compelling reasons warrant" a compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). Under § 1B1.13 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), "extraordinary and compelling reasons" for release include the defendant's medical condition, a combination of the defendant's health and advanced age, or family circumstances. U.S. Sentencing Guidelines Manual § 1B1.13 Application Notes (2018). In addition, a fourth catch-all provision provides that "other reasons" can qualify as extraordinary and compelling. Courts are divided, however, on whether the Sentencing Commission's statements preclude a court from making its own independent assessment as to whether "extraordinary and compelling reasons" warrant a sentencing reduction.

In *United States v. Young*, for example, the Middle District of Tennessee unequivocally held that "district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." 2020 WL1047815 at *6 (M.D. Tenn. Mar. 4, 2020). Likewise, in *United States v. Beck,* the Middle District of Carolina explained that although "the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction." 425 F. Supp. 3d 573, 579 (M.D.N.C. June 28, 2019). That court reasoned that the Sentencing Commission's policy statement is not only "inconsistent with the Commission's statutory role," but also "inconsistent with the First Step Act, which was enacted to further

increase the use of compassionate release and which explicitly allows courts to grant such motions even when [BOP] finds they are not appropriate." *Id.* Hence, the *Beck* court held that courts may consider "whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement." *Id.*

Unlike the courts' decisions in *Young* and *Beck*, the Central District of Illinois concluded that courts do not have "the same discretion conferred to the BOP Director by the Sentencing Commission's policy statement." *United States v. Garcia*, 2020 WL2039227 at *5 (C.D. Ill. April 28, 2020). The court admitted that the Sentencing Commission's "current policy statement is a relic," and also that it did not doubt that the Commission would revise its policy statement to give courts discretion, if it could. *Id.* It held, however, that the Commission's definition of "extraordinary and compelling reasons" is not inconsistent with the text of the First Step Act, and thus courts do not have discretion to independently assess the defendant's proffered reasons. *Id.*

This Court should side with the *Young* and *Beck* decisions, in determining that it does have the power to conduct its own assessment of Mr. Rainone's circumstances favoring compassionate release, apart from the Sentencing Commission's stated categories of "extraordinary and compelling reasons." The First Step Act fundamentally changed the procedure for compassionate release under § 3582(c)(1)(A). Defendants can now move for compassionate release, and the court can grant the motion even where the BOP opposes it. Despite that drastic change, which Congress expressly implemented to expand courts' application of the compassionate release statute, § 1B1.13 of the Guidelines still presupposes that only "[u]pon motion of the Director of the Bureau of Prisons," can a court grant a sentencing reduction. U.S.S.G. § 1B1.13. That requirement is wholly inconsistent with the purpose and plain

7

language of the First Step Act. Furthermore, the Supreme Court has cautioned that commentary in the Guidelines is not authoritative where it "is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Thus, this court has the power to determine extraordinary and compelling reasons for Mr. Rainone's compassionate release, regardless of either the BOP's, or the Sentencing Commission's, definitions of the qualifying circumstances.

But even if this Court were to confine its analysis to the outdated terminology and policy statement from § 1B1.13, it should still grant Mr. Rainone's release because his circumstances qualify as extraordinary and compelling under the old Guideline standards. Also, in cases where defendants have presented similar circumstances to those that are pertinent to Mr. Rainone's situation, courts have granted compassionate release. In *United States v. McCarthy*, for example, defendant John McCarthy was serving a sentence for committing armed bank robbery. Case No. 17-CR-230 (D. Conn. April 8, 2020). The district court granted his motion for compassionate release because McCarthy is a 65-year-old man suffering from asthma and other breathing problems. *Id.* at *4. The court explained that McCarthy's serious medical conditions "substantially increase his risk of severe illness if he contracts COVID-19," and thus he had "demonstrated extraordinary and compelling reasons justifying his release under section 3582(c)(1)(A) and section 1B1.13 of the Sentencing Guidelines." *Id.*

Similarly, in *United States v. Gonzalez*, the Eastern District of Washington granted 64-year-old defendant Teresa Ann Gonzalez's motion for compassionate release based on her extraordinary and compelling reasons. 2020 WL1536155 (E.D. Wash. Mar. 31, 2020). The court stated that Gonzalez's chronic obstructive pulmonary disease ("COPD") and emphysema made her "most susceptible to the devastating effects of COVID-19," and that she was in the "most

8

susceptible age category (over 60 years of age)." *Id.* at *3. In another recent case, *United States v. Muniz*, the defendant was serving a 188-month sentence for a drug conspiracy, and he moved the court for compassionate release. Case No. 09-cr-0199-1 (S.D. Tex. Mar. 30, 2020). The court noted that it was "grievously aware of the current global health crisis caused by COVID-19," and that despite special measures that the BOP is taking, "individuals housed within our prison systems nonetheless remain particularly vulnerable to infection." *Id*. at *2. The court found that the threat from COVID-19, combined with the defendant's health conditions, which included diabetes and hypertension, amounted to extraordinary and compelling reasons warranting compassionate release. *Id.* at *4.

The CDC has identified several conditions that expose people to a greater risk of severe illness from COVID-19.[12] Among those are persons 65 years or older and those who have kidney disease and are on dialysis. Furthermore, in a memorandum dated March 26, 2020, the United States Attorney General cited those CDC guidelines as one discretionary factor that the BOP should use in considering an inmate's release to home confinement.[13] Other factors in that directive include: 1) "[t]he security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;" 2) "[t]he inmate's conduct in prison;" 3) the inmate's re-entry plan; and 4) the inmate's crime of conviction. *Id.*

In this case, Mr. Rainone is among the class of people who are most at risk for severe illness and death from COVID-19. Like the defendants in *McCarthy* and *Gonzalez*, Mr. Rainone is a 65-year-old man, which puts him in the "most susceptible age category." 2020 WL1536155

---

[12] *People Who Are at Higher Risk for Severe Illness*, CDC (March 26, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?

[13] *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*, Office of the Attorney General (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

at *3. Moreover, his health problems are similar in severity to the conditions that the defendants in those cases. Mr. Rainone has prostate cancer, Stage 3 chronic liver disease, and skin cancer on his skull. Mr. Rainone was prescribed an inhaler due to asthma. Mr. Rainone's other conditions include tinnitus and cataracts. Mr. Rainone has been in custody for 134 months and is getting older by the day. He also has and tortuous aorta in his heart which can lead to high blood pressure, aortic insufficiency or premature atherosclerosis.

In addition to the danger of severe COVID-19 illness that Mr. Rainone faces because of his age and health conditions, other factors also favor his release to home confinement. First, Mr. Rainone's crime of conviction was for possession of a weapon by a felon. In *United States v. Johnson*, this Court held that "it is 'the statute of conviction, not actual conduct, that controls eligibility [for relief] under the First Step Act.'" 2019 WL2590951 at *3 (N.D. Ill. June 24, 2019) (quoting *United States v. Davis*, 2019 WL1054554 at *2 (W.D.N.Y. March 6, 2019). Many other districts have reached that same conclusion, "a defendant is eligible for relief under the First Step Act based upon his offense of conviction, as opposed to his actual conduct." *United States v. Williams*, 2019 WL3842597 at *3 (S.D.N.Y. July 3, 2019) (relying on *United States v. White*, 2019 WL 3228335 at *2 (S.D. Tex. July 17, 2019) (collecting more 40 cases from various districts throughout the nation). Here, Mr. Rainone's crime of conviction is a felon in possession of a weapon under 18 U.S.C. § 922(g). For that crime, the Court sentenced him to the mandatory minimum of 15 years' imprisonment.

Mr. Rainone is incarcerated at FMC Rochester a medical referral center. According to the Attorney General's March 26 directive, Mr. Rainone's release should have priority over inmates in higher-security facilities. Furthermore, Mr. Rainone has been an exemplary inmate while at FMC Rochester. He has no incident reports for any misconduct, has participated in various

available programs, such as Intermediate Senior Fitness, Nutrition, Understanding the Affordable Health Care Act, Reality of Re-Entry, Aids Awareness, Exercise for Better Health, and others. Copies of his Inmate Skills Development Plan from the BOP as well as his medical records will be filed under seal.

Mr. Rainone also has a convincing plan for a successful reentry into his community. Mr. Rainone has a job offer to work at his brother's jewelry business, which his brother has owned for the past 25 years. He would reside with his daughter and her children in the suburbs.

    **C.**    **This Court Should Grant Compassionate Release Because it is Consistent with the Sentencing Factors Under 18 U.S.C. § 3553(a), and with the Sentencing Commission's Policy Statements.**

Because extraordinary and compelling reasons warrant Mr. Rainone's release, the First Step Act requires that the Court next consider the sentencing factors under 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). This Court's previous analysis of the § 3553(a) factors, at the time of sentencing, remain unchanged in certain respects. Keeping Mr. Rainone in prison, however, is no longer necessary. The fact he was formerly convicted of racketeering conduct that occurred decades ago is moot. The Chicago Outfit was demolished by the "Family Secrets" case in 2007. Mr. Rainone has served a substantial portion of his sentence, and releasing him to home confinement would undermine neither the seriousness of the offense, nor respect for the law. Moreover, in light of his health conditions and the health risks that he faces from COVID-19, continued incarceration would amount to punishment greater than necessary to serve the purposes under § 3553(a)(2). In addition, the applicable § 3553(a) factors do not prevent the Court from granting Mr. Rainone's request for compassionate release. Although his crime of conviction is undoubtedly serious, other courts have granted compassionate release to defendants who were convicted of equally serious and even far worse crimes. *See United States v. Almontes*,

2020 WL1812713 at *1 (D. Conn. April 9, 2020) (court granted release despite the defendant's conviction for drug trafficking and drug conspiracy); *see also United States v. Wong Chi Fai*, 2019 WL3428504 at *1 (E.D.N.Y. July 30, 2019) (court granted compassionate release where the crimes of conviction were extortion and racketeering conspiracies involving multiple murders). Hence, while the seriousness of the offense is certainly an appropriate consideration, the First Step Act's compassionate release provisions apply with equal force to all defendants.

Finally, this Court must consider whether compassionate release "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Section 1B1.13 of the Guidelines provides that the defendant must not be a danger to any person or to the community. U.S.S.G. § 1B1.13(2). During sentencing in this case, this Court squarely rejected the government's request to sentence Mr. Rainone to a guideline sentence of 210-262 months and imposed the 180-month statutory-mandatory minimum sentence.

Mr. Rainone poses no danger to any person or to his community. Between his cataracts, use of an inhaler, kidney disease, prostate and skin cancers, he is no longer the Mario Rainone of the past. Instead, he is an ailing senior citizen with a myriad of medical issues.

Mr. Rainone's case qualifies for compassionate release under the First Step Act because he first exhausted his administrative remedies with the BOP. In addition, the combination of his health problems and the unique risks that the COVID-19 pandemic poses to him, amounts to extraordinary and compelling reasons that warrant his release. Furthermore, compassionate release comports with both the § 3553(a) factors, as well as the Sentencing Commission's policy statements because Mr. Rainone has served a substantial sentence, and his further incarceration would be greater than necessary to achieve the goals of the sentencing factors. Moreover, Mr.

Rainone poses no risk of recidivism, and is not a danger to anyone; rather, he has worked to put himself in a position to be a productive and contributing member of the community. Therefore, this Court should grant Mr. Rainone compassionate release to home confinement.

## IV. CONCLUSION

WHEREFORE, Defendant, Mario J. Rainone, respectfully requests that this Honorable Court modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and release him to home confinement, or hold a hearing as soon as possible. Mr. Rainone also moves for any additional relief that he might be entitled to by law, or that this Court deems just.

Dated: May 19, 2020

            Respectfully submitted,

            /s/*Joseph R. Lopez*
            /s/*Lisa M. Lopez*

| | |
|---|---|
| Joseph R. Lopez | Lisa M. Lopez |
| Lopez & Lopez, Ltd. | Lopez & Lopez, LTD |
| Attorney No. 6186562 | Attorney No. 6301850 |
| 53 W. Jackson Blvd., Suite 1651 | 53 W. Jackson Blvd., Suite 1651 |
| Chicago, IL 60604 | Chicago, IL 60604 |
| (312) 922-2001 | (312) 922-2001 |

**CERTIFICATE OF SERVICE**

    I, Joseph R. Lopez, hereby certify that on May 19, 2020, I served *Defendant Mario J. Rainone's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)*, in accordance with Federal Rule of Criminal Procedure 49, Federal Rule of Civil Procedure 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system for ECF filers.

                                       Respectfully submitted,

                                       /s/*Joseph R. Lopez*

Joseph R. Lopez
Attorney No. 6186562
Lopez & Lopez, LTD.
53 W. Jackson Blvd., Suite 1651
Chicago, IL 60604
(312) 922-2001