UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | No. | 09 CR 206 |
| v. | ) | Hon. | Harry Leinenweber |
| | ) | | |
| MARIO RAINONE | ) | | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully responds as follows in opposition to defendant Mario Rainone's motion for compassionate release. Defendant's motion should be denied. Defendant does not have a pre-existing condition that puts him at particular risk because of the current pandemic, and due to his extensive criminal history—which led United States District Judge James Alesia to identify the defendant as an "urban terrorist"—defendant should remain imprisoned where he cannot harm the public any further.

BACKGROUND

A.  Offense Conduct and Procedural History

The defendant has lived a life of violent crime. As far back as the late 1970s, the defendant was convicted of residential burglary, and was also convicted of possessing a destructive device—dynamite—for the purpose of blowing up a restaurant. PSR at 7. Rainone was street muscle for the Chicago Outfit; his specialty lay in extorting and terrorizing innocent members of the public. He made extortionate demands for money,

delivered threats to victims, assaulted or directed the assault of recalcitrant victims, and collected payments. In demanding payments, Rainone not only used threats of violence to back up his demands for payment, but he purposefully exploited his victims' fear of the Outfit in order to collect payments. For example, one of Rainone's victims was a restaurant owner in his 70s who was not healthy. Rainone told this victim that unless the victim paid $200,000 within a very short period of time, Rainone would cut the victim's head off, cut his kids' heads off and put them on a pole in front of the restaurant. In assessing Rainone's conduct, United States District Judge James Holderman decided that there was a "great deal of evidence" that showed that Rainone was "a vicious person having little or no regard for human life." *See United States v. Rainone*, No. 91 CR 727 (N.D. Ill. Sept. 4, 1991) (detention order) at 2.

On August 28, 1992, defendant Mario Rainone was convicted in the United States District Court for the Northern District of Illinois of six felony offenses, in violation of 18 U.S.C. §§ 1951, 1962(c) and 1962(d), committed in his role as an "enforcer" for the Patrick Street Crew, an arm of the Chicago Outfit. *See United States v. Rainone*, 32 F.3d 1203, 1205 (7th Cir. 1994); PSR 8; S.Tr. 5.[1] In sentencing Rainone to 210 months in prison on the 1992 racketeering and extortion charges, United States District Judge James Alesia described Rainone as an "urban terrorist" because of his campaign of violence on behalf of the Outfit. Rainone was released from custody on December 22, 2006. *Id.*

---

[1] References to the presentence investigation report appear as "PSR __." References to the sentencing transcript in this case appear as "S.Tr. __." References to the record appear as "R. __."

Because of his multiple prior federal felony convictions, Rainone was not entitled to possess a firearm. But after emerging from prison in 2006, Rainone returned to a life of crime and once again began preying on innocent members of the public. The defendant turned once again to residential burglaries and commercial thefts, and at some time prior to February 13, 2009, defendant acquired a Smith & Wesson Model 19-3, .357 caliber revolver. Tr. 144, 160, 370. The firearm, which was manufactured outside the State of Illinois, was purchased in 1971, but was stolen from a residence during the course of a residential burglary in October 2008. Tr. 368-70. The firearm was discovered in the defendant's night stand, during a search of the defendant's residence for evidence concerning his burglary activity. Tr. 152-57.

On March 5, 2009, a federal grand jury returned an indictment charging defendant with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). R. 1. Rainone was convicted after trial, Tr. 454-56, and this Court sentenced Rainone to a mandatory minimum term of 15 years in prison based on his status as an armed career criminal. R. 154.[2] The court of appeals affirmed the judgment of this Court, *United States v. Rainone*, 816 F.3d 490 (7th Cir. 2016), and Rainone's collateral attack proved fruitless. *United States v. Rainone*, No. 17 CV 5916 (N.D. Ill. Jan. 11, 2019), ECF #9.

On or about May 19, 2020, the defendant filed his motion seeking compassionate release. R. 173.

---

[2] Defendant also pleaded guilty in the Circuit Court of Lake County to residential burglary. PSR 9.

3

### B. The BOP's Response to COVID-19

As reported on BOP's website, in January 2020, BOP began a course of action to respond to the spread of COVID-19. Phase One of this course of action included the creation of an agency task force working in conjunction with subject matter experts from the Centers for Disease Control and Prevention ("CDC") and the World Health Organization to review guidance about best practices to mitigate transmission. *Id.* On March 13, 2020, as part of Phase Two of the course of action, BOP began implementing various measures to mitigate the spread of the virus. These measures included suspending social visits, in-person legal visits, all inmate movement, and staff travel. BOP also began implementing procedures to quarantine and screen inmates and staff for the virus, which included screening all newly arriving inmates for exposure risk factors and symptoms, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors. Id.

Subsequent phases of BOP's response included the authorization of inmate movement in order to avoid overcrowding at BOP facilities. However, such movements were limited to inmates who had been in custody for more than fourteen days and who had been subjected to exit screening to ensure that the prisoner had no COVID-19 symptoms (fever, cough, shortness of breath) and a temperature less than 100.4 F. Subsequent phases of the course of action included the quarantine and isolation of all new inmates with asymptomatic inmates being quarantined for fourteen days and symptomatic inmates being isolated until testing negative for COVID-19, modifying operations to maximize social distancing, the maximization of telework for staff members,

4

and conducting inventory reviews of all cleaning and medical supplies to ensure ample supplies were on hand and ready to be distributed as necessary at BOP facilities.

On April 1, 2020, as part of Phase 5 of its COVID-19 action plan, BOP secured all inmates to their assigned cells or quarters to decrease the spread of the virus. On April 13, 2020, BOP extended the implementation of Phase 5 of its COVID 19 plan until May 18, 2020. Further details and updates of BOP's modified operations are available to the public on BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

## ARGUMENT

A.  **Legal Standard**

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the

5

> community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under this statute, a sentence reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. *Id.* § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" per U.S.S.G. § 1B1.13(2). Finally, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Id.*

Congress directed that the Sentencing Commission issue policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Pursuant to this directive, § 1B1.13 of the Sentencing Guidelines Manual sets forth the Commission's policy statement relating to § 3582(c). Guideline § 1B1.13 provides that under § 3582(c)(1)(A), a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community"; and (3) "the reduction is consistent with this policy

6

statement." Application Note 1 to Guideline § 1B1.13 identifies factors that may constitute "extraordinary and compelling reasons" for a sentence reduction, including a defendant's medical condition, age, family circumstances, and an open-ended category for "other reasons."

Thus, in order to obtain relief under § 3582(c)(1)(A)(i), the defendant must show that:

(1) he has requested relief from the BOP and exhausted any administrative appeals in that process;

(2) there exist extraordinary and compelling reasons that warrant a sentence reduction;

(3) the requested reduction is consistent with the policy statements issued by the sentencing commission in Guideline §1B1.13, including the requirement that "the defendant is not a danger to the safety of any other person or to the community"; and

(4) the reduction is warranted in light of the factors listed in 18 U.S.C. § 3553.

### B.     Exhaustion of Administrative Remedies.

Rainone submitted a request for compassionate release in April 12, 2020. Because the First Step Act provides that a defendant may file a motion with this court after 30 days have elapsed without answer from the date of the warden's receipt of a defendant's request, based on the information currently available to it, the government does not dispute that the defendant has satisfied the threshold exhaustion requirement for filing a motion for release under § 3582(c)(1), as amended by § 603 of the First Step Act.

    C.    **Defendant Has Not Established Extraordinary and Compelling Reasons Warrant His Release under the Factors Enumerated in 18 U.S.C. § 3553.**

Defendant has not met the statutory standard of presenting "extraordinary and compelling reasons" warranting a reduction in his sentence under the factors enumerated in 18 U.S.C. § 3553. Guideline § 1B1.13, the policy statement that describes bases that might warrant a sentence reduction under § 3852(c)(1)(A)(i), provides that a court may reduce a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. *See also, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Application Note 1 to Guideline § 1B1.13 identifies factors that may constitute "extraordinary and compelling reasons" for a sentence reduction, including a defendant's medical condition, age, family circumstances, and an open-ended category for "other reasons." Specifically, according to the policy statements, the Sentencing Commission concluded that "extraordinary and compelling reasons" were limited to the following four scenarios:

1. The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

8

2. The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).

3. The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

4. If there were "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

The changes to 18 U.S.C. § 3582(c)(1)(A) made by the First Step Act altered the procedure through which compassionate release could be sought, that is, by allowing defendants to bring their requests to court after exhausting their administrative remedies, but they did not alter the grounds for granting relief.

The defendant argues that he is eligible for release because of his age and his medical condition. He claims he "has" prostate cancer and "skin cancer on his skull." Motion at 10. His arguments are meritless.

First, age, standing alone, is not an extraordinary and compelling reason to reduce a sentence absent evidence that the defendant is "experiencing a serious deterioration in physical or mental health because of the aging process." App. n. 1(B). With respect to the proof required to demonstrate a serious deterioration in physical or mental health, Application Note 1(A)(ii)(III) requires evidence that the defendant's health is deteriorating because of the aging process, and that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional

9

facility and from which he or she is not expected to recover." Though the defendant is in his 60s, he is receiving appropriate medical care and there is nothing exceptional about his condition.

Second, contrary to defendant's contention, according to BOP medical records, defendant does not currently suffer from any cancer—his prostate cancer was successfully treated seven years ago. He does not currently suffer from skin cancer either; he suffers from actinic keratosis—scaly and patchy skin due to sun exposure. He currently takes no medications and is able to fully care for himself in prison. This Court should take careful note of the misleading representations made in defendant's motion concerning his medical condition and deny it.

Defendant also points to prison conditions in Iran and China as grounds for his release. Motion at 2-3. Defendant, of course, is not serving time in Iran or China; he is in a medical facility, rather than a regular prison, and according to information on the BOP's website (visited earlier today), there is not a single inmate or staff member at FMC Rochester that currently suffers from COVID-19. Given that the defendant's condition is stable, that he is receiving proper medical care at an institution geared towards providing medical treatment, and that there is not a single active case at the medical institution, neither defendant's age nor his health condition—singly or in combination—warrant relief.

Moreover, early release of defendant would be inconsistent with the relevant factors set forth in § 3553(a), which the Court must also consider. Both the nature and circumstances of the offense and the history and characteristics of the defendant, as well

10

as the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, all militate strongly against early release from prison in this case. Defendant's extensive criminal history strongly suggests that, if this Court gives defendant yet another opportunity to commit crimes against others, he will seize it, notwithstanding his age. At every turn, defendant has chosen to pursue the path of a life of crime. He was released from custody on his 1992 case in December 2006. He was arrested just a little over two years later and charged in this case. To Rainone and his other cohorts who have been associated at times with the Chicago Outfit, age is no impediment to committing violent crime. *See, e.g., United States v. Scalise et al.*, 10 CR 290 (N.D. Ill.) (organized crime associates in their 70s planned armed robbery of armored car and robbery of residence prior to intervention by law enforcement); *United States v. Volpendesto*, 08 CR 115 (N.D. Ill.) (organized crime associate in his 80s personally participated in mob-related bombing); *United States v. Hanhardt*, 00 CR 853 (N.D. Ill.) (retired law enforcement officer and organized crime associate in his 70s personally participated in jewelry theft and robbery ring). This Court should not give defendant another chance to harm the public, because this defendant has proven time and again that he will do so if provided the opportunity. Defendant has shown a blatant disregard for the welfare of others and the public should not be made to bear the risk of his early release. *Accord United States v. Robinson*, No. 06 CR 850, mem. order (N.D. Ill. May 18, 2020) (Kendall, J.), ECF #210 at 2 (relying upon defendant's lengthy and violent criminal history in denying motion for compassionate release).

11

## CONCLUSION

For the foregoing reasons, the motion should be denied.

        Respectfully submitted.

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   /s/ Amarjeet S. Bhachu
       AMARJEET S. BHACHU
       Assistant United States Attorney
       219 South Dearborn Street
       Fifth Floor
       Chicago, Illinois 60604
       (312) 469-6212

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE was served on June 3, 2020, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Amarjeet S. Bhachu
AMARJEET S. BHACHU
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois
(312) 469-6212