**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 09-CR-206 |
| v. | ) | Honorable Harry D. Leinenweber |
| | ) | Judge Presiding |
| MARIO J. RAINONE | ) | |

**DEFENDANT MARIO J. RAINONE'S REPLY TO THE GOVERNMENTS RESPONSE
FOR COMPASSIONATE RELEASE**

The Defendant, MARIO J. RAINONE, by and through his attorneys, JOSEPH R. LOPEZ and LISA M. LOPEZ, herby files his reply to the government's response to his motion for compassionate release. Mr. Rainone should be granted compassionate release because of his age, pre-existing, and current conditions that make him more susceptible to COVID-19. In support of his request for compassionate release, Mr. Rainone offers the following additional information:

I. **This Court has the Power to Grant the Relief that Mr. Rainone Seeks**

The First Step Act governs compassionate release, and it provides four prerequisites that a Defendant must demonstrate before a court will grant such relief. 18 U.S.C. § 3582(c)(1)(A)(i) (Westlaw current through 2020). The defendant must first show that he has exhausted his administrative remedies, and next, that "extraordinary and compelling reasons" warrant his release. 18 U.S.C. § 3582(c)(1)(A). The Court must then consider the sentencing factors under 18 U.S.C. § 3553(a), and finally, determine whether the inmate's release is consistent with the Sentencing Commission's policy statements. *Id.*

In its response to Mr. Rainone's motion for compassionate release, the government concedes that Mr. Rainone has exhausted his administrative rights. Dkt. 178 at 7. The core of its argument in opposition to Mr. Rainone's motion focuses on his lack of "extraordinary and compelling reasons" that would allow this Court to grant him compassionate release. *Id.* at 8-13.

Specifically, the government points out that Mr. Rainone's age and health problems, combined with the deadly COVID-19 pandemic, do not fit neatly within one of the four scenarios for release that the Sentencing Commission described in U.S.S.G. § 1B1.13. *Id.* at 8-9. The government noted that the First Step Act updated "the procedure through which compassionate release could be sought," but "did not alter the grounds for granting relief." *Id.* at 9.

The government's interpretation of the relevant provisions of the First Step Act flies in the face of Congress's intent when it passed the legislation, which was to increase the availability of compassionate release. *See* § 603(b) of Public Law 115-391, entitled "Increasing the Use and Transparency of Compassionate Release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Furthermore, the "vast majority" of district courts around the United States, have held that, since the passage of the First Step Act, §1B1.13 "is not binding but is, rather, helpful guidance." *United States v. Almontes*, 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020) (collecting cases). Even more recently, here in the Northern District of Illinois, a court twice joined that 'vast majority,' holding that:

> while the criteria in § 1B1.13 provides useful guideposts, the court may look beyond the defendant's medical condition, age, and family circumstances, as delineated in the Sentencing Commission's guidance, to construe what constitutes extraordinary and compelling circumstances.

*Id.*, *United States v. Robert Cardena,* No. 09-CR-0332, slip op. at 6 (N.D. Ill. May 15, 2020) (ECF No. 1890); *United States v. Lewellen*, 09-CR-0332, slip op. at 6 (N.D. Ill. May 22, 2020) (ECF No. 1896). Courts around the United States have already rejected the government's interpretation of the First Step Act, and this Court should do the same. This Court is not bound by any particular compassionate release scenarios that the Sentencing Commission has prescribed in U.S.S.G. § 1B1.13. Rather, "district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." *United States*

*v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). Hence, this Court has the power to grant the compassionate release that Mr. Rainone is requesting.

**II.    Mr. Rainone's Circumstances are Extraordinary and Compelling, and all Other Factors Warrant his Release**

The COVID-19 pandemic has killed 112,878 people in the United States, and nearly 2 million people in this country have contracted the virus.[1] A little over one month ago, an ABC News article citing sources from the BOP, reported that 70 percent of the inmates that the BOP had tested were positive for COVID-19.[2] While that percentage is alarming, the lack of transparency with the data that the BOP is, and is not, releasing, is equally as troubling. A Forbes article showed anomalies in the data, leading to the conclusion that the BOP is almost certainly underreporting the number of inmates who are sick with COVID-19.[3] The underreporting may not be due to any nefarious plot by the BOP, but may simply have been, or currently still is, a factor of the BOP not having sufficient resources to adequately test inmates. The likely misinformation is, nonetheless, alarming, and endangering the health and lives of inmates and staff in all BOP facilities.

The BOP system where Mr. Rainone is housed is a striking example of the questionable or misleading data that the BOP is disseminating. The BOP shows that FMC Rochester shows no

---

[1] COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE), https://gisanddata.maps.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6 (last visited June 10, 2020).

[2] Luke Barr, *70% of inmates tested have COVID-19: Bureau of Prisons*, https://abcnews.go.com/US/70-inmates-tested-covid-19-bureau-prisons/story?id=70454527 (May 1, 2020).

[3] Walter Pavlo, *Bureau Of Prisons Underreporting COVID-19 Outbreaks In Prison*, https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#2a5bcd747ba3 (April 1, 2020).

cases of inmates or staff who have tested positive for COVID-19 but one staff member who has recovered, likely meaning there was once one reported case in that jail earlier in the pandemic. According to the BOP's website, FMC Rochester houses 663 inmates.[4] The Bop's COVID-19 website shows that out of the entire 134,112 inmates and 36,000 staff members, 2085 inmates and 191 staff members have tested positive.[5] Thus, the combined percentage of inmates and staff who have tested positive across the entire BOP system is about 1.55 percent. Based on that percentage, one would expect that FMC Rochester would have about 10 reported cases, yet the BOP data shows no current cases and one staff recovery. Again, Mr. Rainone makes no argument that the BOP is willfully misleading the public with its data. Rather, his argument here is that the data is inconsistent and contradictory, and that it does not come close to reflecting the real risks of infection that inmates and staff members are facing.

      The BOP cannot assure this Court that Mr. Rainone will not contract COVID-19. If he were to contract the virus, the consequences would be severe due to his chronic state 3 kidney disease. "Patients with … chronic kidney disease … can be more susceptible to COVID-19 and are likely to experience more severe illness." https://www.dynamed.com/management/covid-19-and-patients-with-chronic-kidney-disease-ckd-and-end-stage-renal-disease-esrd (last visited June 10, 2020). Further, Mr. Rainone's past history of prostate cancer makes him more vulnerable due to his weakened immune system from having 42 chemotherapy treatments. https://www.cancer.net/blog/2020-05/common-questions-about-covid-19-and-cancer-answers-patients-and-survivors (last visited June 10, 2020). Besides the 42 chemotherapy treatments, Mr. Rainone received the "Red Devil," known as Doxorubicin, which is a chemotherapy drug used to treat many different types of cancer.

---

[4] https://www.bop.gov/locations/institutions/rch/
[5] https://www.bop.gov/coronavirus/

Furthermore, while the government asserts that Mr. Rainone does not currently suffer from skin cancer, but rather "scaly and patchy skin due to sun exposure" (Dkt. 1155 at 10), it neglects to note that a percentage of the actinic keratosis can turn into skin cancer if left untreated. https://www.mayoclinic.org/diseases-conditions/actinic-keratosis/symptoms-causes/syc-20354969 (last visited June 10, 2020). Mr. Rainone lives under the belief that he has skin cancer, but Mr. Rainone, like the government, is not a medical professional qualified to diagnose or treat diseases. A medical professional at FCM-Rochester ordered a biopsy on Mr. Rainone's actinic keratosis. However, that biopsy was never completed due to the COVID-19 pandemic and related shutdown. Nothing about Mr. Rainone's representation in his first motion that he has skin cancer or prostate cancer was intended as a "misleading representation." *Id.*

Next, although Mr. Rainone has an admittedly lengthy criminal history, he has served his sentence for the crimes he committed. The crime his is currently serving time for involves possessing an *unloaded* weapon with a felony conviction. This crime would carry a substantially lower sentence had it not been prosecuted in federal court.

Mr. Rainone has established extraordinary and compelling reasons to warrant a reduction of his sentence and a compassionate release. Further, his circumstances satisfy all other conditions that courts look to when evaluating a compassionate release request under the First Step Act. Mr. Rainone has a place to live with his daughter, and requests that any time of quarantine be served in her home. This Court should grant Mr. Rainone's request for compassionate release.

WHEREFORE, Defendant Mario Rainone respectfully requests that this Honorable Court modify his sentence under 18 U.S.C. §3582(c)(1)(A)(i) and grant him compassionate release. Mr. Rainone consents to home confinement for a period that the Court sees fit to order as a

condition of his supervised release. Mr. Rainone also requests any additional relief that he may be entitled to by law, or that this Court deems just.

                                                                 Respectfully submitted,

                                                                 */s/Joseph R. Lopez*
                                                                  *s/Lisa M. Lopez*

Dated: June 10, 2020

Joseph R. Lopez and Lisa M. Lopez
Lopez & Lopez, LTD.
Attorney Nos. 6186562 and 6301850
53 West Jackson Blvd., Suite 1651
Chicago, IL 60604 (312) 922-2001

## **CERTIFICATE OF SERVICE**

I, Lisa M. Lopez, attorney for Mario J. Rainone, hereby certify that on Wednesday, the 10th of June 2020, I filed the above-described document on the CM/ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

*/s/Lisa M. Lopez*

Lisa M. Lopez
Lopez & Lopez, LTD
Attorney No. 6301850
53 West Jackson Blvd., Suite 1651
Chicago, IL 60604
(312) 922-2001